KOTTARI v. EMPIRE IRON CO.

MASTER AND SERVANT—WORKMEN'S COMPENSATION ACT—CLAIM BY
UNAUTHORIZED ATTORNEY SUFFICIENT WHERE RECOGNIZED BY EM-
PLOYER.

　　Where, shortly after an employee was accidentally killed in
　　the course of his employment, a claim on behalf of his de-
　　pendents living in a foreign country was made by an at-
　　torney, and the employer answered the claim without at-
　　tacking its sufficiency, such claim was sufficient to stop the
　　running of limitations, although the authority of the at-
　　torney to make the claim was afterwards repudiated by the
　　attorney in fact of the dependents. FELLOWS, C. J., and
　　CLARK, J., dissenting.

Certiorari to Industrial Accident Board. Sub-
mitted October 5, 1921. (Docket No. 18.) Decided
February 8, 1922.

Hilma Kottari and another presented their claim
for compensation against the Empire Iron Company
for the accidental death of their decedent in defend-
ant's employ. From an order awarding compensa-
tion, defendant and the Fidelity & Casualty Company
of New York, insurer, bring certiorari. Affirmed.

Cummins & Nichols, for appellants.

L. A. Lyon, for appellee.

MOORE, J. This is certiorari to the industrial ac-
cident board to review their action in making an
award to claimants growing out of the death of Nicoli
Kottari, which occurred September 19, 1916. The
accident was reported to the industrial accident board
October 14, 1916, by the superintendent of the mine,

in which report appear the following questions and answers:

"Place of birth: Finland.

"Single, married, widowed or divorced: Was supposed to be single.

"Number of children under 16 years: Man who claims to be his brother-in-law says there is one."

Soon after the accident one A. W. Jurma, an attorney at Ishpeming, Michigan, took up with the Fidelity & Casualty Company the matter of compensation for the death of Kottari, making the claim that there were a wife and child dependent upon him, living in Finland. The record does not disclose that a more formal claim was made until March 31, 1917.

The deposition of Mr. Jurma was taken. In it appear the following questions and answers:

"*Q.* Can you state at whose request this letter was written?

"*A.* I cannot. I don't remember who the party was who came in, but no doubt somebody did ask me to write it.   *   *   *

"*Q.* State fully your best recollection of the circumstances in connection with the writing of that letter, as to who requested you to write it and why you did prepare it.

"*A.* I can answer this only in a general way. When a person comes to my office in these matters and if he is not closely and vitally interested in the deceased I advise him to file a claim as a precautionary matter, and I am quite satisfied that such was the case here. I never make or prepare a claim in any case without the request of somebody.

"*Q.* Do you remember who authorized you to write this letter?

"*A.* I do not, except as stated before.   *   *   *

"*Q.* At the time the first letter was written did you know whether or not Mr. Kottari had dependents or not?

"*A.* I had no personal knowledge. What knowledge I might have had was hearsay, given to me as attorney."

At the trial it was stipulated certain correspondence might be received. We quote part of the stipulation:

"It is further hereby stipulated and agreed that the three letters hereto attached, addressed to Claude C. Ritze, judge of probate, Iron River, Michigan, signed R. R. Freeman, one of which is dated October 11, 1917, one September 14, 1917, one July 17, 1918, and the letter hereto attached addressed to Mr. Claude C. Ritze, judge of probate, Iron River, Michigan, signed N. C. Phillips, Examiner, and dated July 15, 1918, may also be considered in evidence on the hearing of said claim by and before said industrial accident board, with the same force and effect as if said letters were formally introduced in evidence upon said hearing, the genuineness of the signatures to said letters being hereby conceded, and that at the time said letters were written, said R. R. Freeman was attorney for said insurer, and the said N. C. Phillips at the time the letter signed by his name was written, was in the employment of said insurer, and authorized to write said letter."

We quote such of the correspondence as we think material:

"Jos. D. Griffin, Examiner,
313-18 Wells Building, Milwaukee, Wis.
October 14th, 1916.
Industrial Accident Board,
Received Oct. 16, 1916,
Lansing, Michigan.
"Industrial Accident Board,
"Lansing, Michigan.
"*Gentlemen:*
*In re* Empire Iron Company,
Nicolai Kodderi, No. 1131.
"Herewith enclosed please find report of accident which was fatal to the above named injured employee, and I wish to call your attention to the fact that this case will be handled through this office. I wish also to advise you that Attorney Jurma, of Ishpeming, Michigan, has now appeared in this case, and claims that the deceased had a wife and one child living in Finland.
"Yours very truly."

December 11, 1916, Mr. Griffin wrote:

"Industrial Accident Board,
"Lansing, Michigan.
"*Gentlemen:*
"*In re* Empire Iron Company, Nicolai Kodderi, No. 1131.
"Mr. Kodderi was killed on September 19th, 1916, while in the employ of the Empire Iron Ore Company of Palmer, Michigan.
"Attorney A. W. Jurma of Ishpeming, Michigan, presents claim to dependency for wife and child in Finland.  The assured has no definite knowledge as to whether there were dependents or not.
"John W. Elliott, undertaker at Negaunee, Michigan, has presented to our assured a bill for $99.50, and there are a few other outstanding bills incurred on account of the funeral.  We are ready and willing to pay the funeral expenses;"

and inquired if an allowance would be made if dependents appeared.

Later one Rantaaho wrote to the industrial accident board a letter in which appears the following:

"I want it to be made known that the widow has given me an order and power to make settlement in this case.  Also, I am sure that Attorney A. W. Jurma of Ishpeming, has never been asked by dependents to look after their rights in this case."

An amended answer was then filed, it being contended that, if Jurma had no authority to act, defendants were not liable because no claim was made within six months.

The contention of counsel is, we quote from the brief:

"In the last analysis, the situation resolves itself into this.  A claim was made informally which the insurance company recognized as a claim without having any notice that the person making the claim had no authority to do it.  When it received such notice it then denied liability upon the ground that no claim had been made in behalf of the dependents.  We think

this raises squarely the question of whether or not a claim made by a pure volunteer is a good claim and will sustain a finding when the authority of the man making it was afterwards repudiated by the attorney in fact of the dependents."

After the amended answer was filed the following letter was written:

"January 22, 1918.

"Hon. CLAUDE C. RITZE,
     "Judge of Probate,
          "Iron River, Michigan.
"*Dear Sir:*
          *Re Kottari v. Empire Iron Company*

"I have your letter of December 27th in the above matter. It has not been answered before due to the fact that I have been in Washington on work connected with the war department since some time before Thanksgiving.

"I was just as much surprised as yourself to learn that an amended answer had been filed. During my absence, Mr. Griffin, who is the adjuster for the Fidelity & Casualty Company of New York, called at the office and directed my assistant, Mr. Bendinger to file such answer.

"You and I discussed this case thoroughly and the only question evidently which anyone thought was involved, was that of the dependency. * * * It seems to me we are estopped to raise a defense of such a character at the present time, and in view of the fact that within the statutory time an attempt was made to negotiate the claim by paying expenses, certainly we had knowledge of the making of a claim, and the fact that we answered and affirmatively alleged the payment of funeral expenses shows conclusively that we recognized the making of the claim on behalf of the applicant. * * * In any event I do not possibly see how the defense set up in the amendment can be in any way helpful to us at the present time, but I want you to know that I knew nothing of the filing of this amendment until my return home.

"Yours very truly,
               "R. R. FREEMAN."

We now quote from the findings of the industrial accident board:

"As to the question of whether or not claim for compensation was made within six months, when the cause was heard on arbitration, two letters were admitted in evidence and marked as exhibits by the deputy. One letter, admitted as evidence and marked as Exhibit 2 over the initials of the deputy is a letter bearing the date of January 22, 1918, from Robert R. Freeman of Milwaukee, Wisconsin, and addressed to Hon. Claude C. Ritze, judge of probate, Iron River, Michigan. Judge Ritze was at that time serving as attorney for claimants, or as attorney for Matt Rantaaho, who held power of attorney from Mrs. Kottari. Mr. Freeman was attorney for the respondents, and it is conceded by a stipulation in the file of the case that letters written as early as October 11, 1917, were written while he was attorney for the insurers; and in fact it appears from the files that he was at that time the attorney in charge of the case in behalf of respondents. * * *

"In the letter Mr. Freeman expressly says 'Certainly we had knowledge of the making of the claim.' This admission on the part of Mr. Freeman, the attorney for respondents in charge of the case from an early date, is *prima facie* evidence that claim was made. No proof has been introduced on the part of respondents to explain this statement or to show that it was made under misunderstanding of the facts or conditions. There is no affirmative proof on the part of respondents that claim was not made. There being evidence that claim was properly made, and no testimony to rebut it, we have no alternative but to rely on the evidence before us."

We have then a case where a man was killed under such circumstances that if he had dependents they would be entitled as of course to compensation under the employers' liability law. The superintendent of the mine knew of this death, and within a month reported it to the industrial accident board with the information that the brother-in-law of the deceased

advised him there was one child under the age of 16 years.

October 14, 1916, only a little over a month after the death, Mr. Griffin, the claim examiner, advised the industrial accident board the case would be handled through his office, and that he had been advised by Attorney Jurma that the dead man had a wife and one child living in Finland.

An original answer to the claim was filed, and while we are unable to find it in the return, the inference is fair from the language of Mr. Freeman, the attorney for defendants, in his letter which we have quoted, that it did not aver that the claim was not made in time, and it is not until long after the six months has expired that an amended answer is filed, in which for the first time the question is raised.

The purpose and requisites of a claim for compensation have been considered by this court in *Purdy* v. *City of Sault Ste. Marie*, 188 Mich. 573; *Matwiczuk* v. *Foundry Co.*, 189 Mich. 449; and *Shafer* v. *Parke, Davis & Co.*, 192 Mich. at p. 580. While none of these cases is on all fours with the instant case, what was said therein requires this case upon its facts to be affirmed.

It is affirmed, with costs to the claimant.

WIEST, STONE, BIRD, SHARPE, and STEERE, JJ., concurred with MOORE, J.

CLARK, J. (*dissenting*). Kottari was killed September 19, 1916. A formal claim for compensation was filed by Mr. Jurma April 2, 1917, more than six months after the death. But letters had passed between Mr. Jurma and defendants within the period of six months. Assuming that in such letters there was language sufficient to make an unequivocal claim of compensation, it still appears that Mr. Jurma had

no authority to act for the dependents. His testimony discloses no authority and the statement of Rantaaho, dependents' attorney in fact, that no such authority was given is not disputed. The defendants recognized Mr. Jurma as representing the dependents until shortly after May 21, 1917, when Rantaaho filed his power of attorney.

Mr. Freeman's opinions, expressed in his letter of January 22, 1918, quoted by Justice MOORE, as to estoppel and as to the effect of recognizing Mr. Jurma as representing the dependents, are binding upon no one. They do not constitute an admission by defendants that a claim for compensation was made by dependents within the statutory time. The recognization by defendants of Mr. Jurma and of the claim for compensation made by him was upon the belief that he represented the dependents, which belief later proved to be groundless. Defendants then claimed the benefit of the statute of limitations, contending that no claim for compensation had been made within the statutory period. There is no evidence to refute such contention.

The award should be vacated.

FELLOWS, C. J., concurred with CLARK, J.