# KEYSTONE LIME AND STONE COMPANY ET AL.

## vs.

## ROSA KABAT.

*Workmen's Compensation—Notice of Accident—Excuse for Failure to Give—Appeal from Commission.*

Code, art. 101, sec. 38, providing that the failure to give notice of the accident within ten days, or of a death resulting therefrom within thirty days, shall be a bar to any claim, "unless excused by the commission either on the ground that notice for some sufficient reason could not have been given, or on the ground that the State Accident Fund, insurance company, or employer, as the case may be, has not been prejudiced thereby," the burden is on the claimant to produce before the commission facts upon which the excuse may be granted on either of the grounds mentioned in the statute.                pp. 570, 571

On appeal by the claimant from the commission, the record transmitted to the court should contain the facts produced by the claimant before the commission by way of excuse for failure to give the statutory notice of the accident or death; and it should appear, clearly and affirmatively, from the finding of the commission, that the claimant was or was not excused, and if excused, the ground therefor, and, in the absence of such a showing, the appeal should be dismissed.            pp. 571, 572

*Decided January 19th, 1923.*

Appeal from the Baltimore City Court (DAWKINS, J.).

Proceeding by Rosa Kabat, next friend of Leonard Kwiatanouski and Lillian Kwiatanouski, infant children of Joseph Kwiatanouski, deceased, claimant, against the Keystone Lime and Cement Company, employer, and the Travelers Insurance Company, insurer, by way of appeal from a decision of the Industrial Accident Commission. From a judgment for the claimant, said employer and insurer appeal. Reversed.

The cause was argued before BOYD, C. J., BRISCOE, THOMAS, PATTISON, URNER, STOCKBRIDGE, ADKINS, and OFFUTT, JJ.

*L. Vernon Miller,* with whom were *George Weems Williams* and *Marbury, Gosnell & Williams* on the brief, for the appellants.

*John E. Magers,* for the appellee.

PATTISON, J., delivered the opinion of the Court.

On the 8th day of June, 1916, an employee of the Keystone Lime and Stone Company was run over and injured by a loaded car, owned and used by the company in the operation of its quarry near Port Deposit, Maryland.

Immediately after the accident he was sent to a hospital at Havre de Grace, Maryland, where he, on the same day, died from the injuries he had sustained.

On the 10th day of June, 1916, the company filed its report with the Accident Industrial Commission, made by its superintendent, L. E. Tavenner, in which the name of the person, who had sustained the injuries resulting in death, was given as "F. Smith," and on the 13th day of the same month, Dr. Richard H. Smith, the attending physician, filed his report with the commission, in which the name of the deceased party was given as Frank Smajda, and his address as 604 Bond Street, Baltimore, Md.

On the 29th day of June, Michelina Smajda, alleged widow of Frank Smajda, gave notice to the Keystone Lime and Stone Company of the injuries and death of her husband, and on the same day filed a claim with the commission for compensation arising out of his death.

After appropriate proceedings before the commission, an order was passed by it on the 8th day of July, 1916, ordering the Keystone Lime and Stone Company, employer, and the Travelers' Insurance Company, insurer, "to pay unto Miche-

lina Smajda the sum of $5.25 per week, payable weekly, for the period of eight years from the 8th day of June, 1916, for the death of her husband, and such further sum, not to exceed $75, on account of funeral expenses incurred by reason of the death of Frank Smajda."

Pursuant to the above order, the compensation awarded thereby was regularly paid to Michelina Smajda until a few weeks prior to February 17th, 1921, when the Travelers' Insurance Company refused to continue the weekly payments, and, on the day last named, Moses W. Rosenfeld, for and on behalf of Michelina Smajda, wrote the commission informing it of the insurance company's refusal to continue the weekly payments required under its order, saying that a representative of the company had stated to him that the reason for its refusal was that another party was claiming compensation and that, as stated by such party, the deceased employee of the Keystone Lime and Stone Company was not the husband of Michelina Smajda. Upon the receipt of this letter the commission wrote to the insurance company, insisting upon its compliance with the commission's order of July 8th, 1916, until relieved by it of liability thereunder.

The record does not disclose any reply to this letter from the insurance company but, on the 31st day of March, 1921, John E. Magers, attorney for one Rosa Kabat, wrote the commission enclosing a claim for compensation made by her as next friend of Lillian and Leonard Kwiatanouski, at that time aged fifteen and seventeen years respectively, arising out of the death of Joseph Kwiatanouski, sometimes called Joseph Bloome, the father of said infants, who died on the 8th day of June, 1916, as the result of injuries sustained that day while in the employ of the Keystone Lime and Stone Company near Port Deposit, Maryland. In this letter to the commission Mr. Magers stated:

> "It seems that this party was also identified by a woman by the name of Michelina Smajda, as her husband, and compensation was awarded her under Claim No. 6506, claiming that the deceased was her hus-

band, Frank Szmajda, which compensation she has been receiving for several years.

"Rosa Kabat, 522 S. Washington Street, Baltimore, Md., has had the custody of the two children of Joseph Kwiatanouski for about 10 years; the wife being confined in Spring Grove Asylum, and she is making the enclosed claim on behalf of the children.

"It appears that Joseph Kwiatanouski placed the two children with Mrs. Kabat, and had been paying her for their support until his death in June, 1916, since which time she has been caring for them herself.

"She had made a number of efforts to locate the deceased, and has only recently been able to ascertain that the man who was killed was called Joseph Bloom, but was in reality Joseph Kwiatanouski, and the father of the two children in her care.

"I am writing these additional facts so that the commission may institute whatever investigation they may desire, to the end that the proper beneficiaries or dependents may be paid compensation."

On April 1st, 1921, a notice, and copy of the claim so filed with the commission by Rosa Kabat, were sent to both the Keystone Lime and Stone Company, the employer, and the Travelers' Insurance Company, the insurer, and they, together with Michelina Smajda, were, on April 19th, 1921, told by the commission in a letter to them that a hearing in the case had been requested by some of the parties interested on the following grounds:

"(1) To determine whether or not claim was properly filed, it being claimed that Joseph Kwiatanouski was the deceased employee, and not Frank Szmajda (or Smith).

"(2) To determine dependency.

"This hearing will be conducted by the commission under authority of the commission on Tuesday, May

3rd, 1921, at 10 A. M., at 741 Equitable Building. Baltimore, Md."

"Please accept this notice to be present or represented if you desire, and notify the commission if you have any witness whom you desire to have summoned."

A hearing was had by the commission on the day named in this notice, at which Michelina Smajda, Rosa Kabat, claimant, Keystone Lime and Stone Company, the employer, and the Travelers' Insurance Company, the insured, were present and represented by counsel.

The evidence offered at the hearing by Rosa Kabat in support of the claim made by her was in substance as follows: That Joseph Kwiatanouski some years prior to 1916, at the time when his wife became mentally deranged and was sent to an asylum, left his two infant children in the care and custody of Rosa Kabat, to whom he paid therefor the sum of three dollars per week. This he continued to pay weekly until the year 1916, when he left the City of Baltimore in search of work.

Thereafter they heard no more of him and what became of him was unknown to them. No effort, it seems, was made to discover his whereabouts until several years thereafter, not until some time in the year 1920 or 1921. The reason given therefor being that after his departure this country in 1917 became involved in the Great World War, and because of it they were not able to make the necessary search for him. But two years after its close, John Kabat, the son of Rosa Kabat, became actively interested in a search for Joseph Kwiatanouski. He learned, it seems, that Kwiatanouski, after leaving Baltimore in 1916, had worked in one of the quarries at or near Port Deposit and that, in June, 1916, a man employed therein had been injured and carried to the hospital in Havre de Grace, where he died.

Upon a visit to the quarry he obtained certain information from those employed at the quarry on June 8th, 1916, concerning the accident occurring on that day, resulting in

the injury and death of its employee, which led to the filing of the claim for compensation by Rosa Kabat.

At the hearing before the commission a number of men, including the superintendent of the quarry, who had worked with and who knew the injured man before and at the time he sustained the injuries from which he died, described his general appearance, giving the color of his hair, and mustache and, in their opinion, his age, weight and height.

A photograph of two men was then produced, one of whom was Joseph Kwiatanouski, sometimes called Joseph Bloom, as shown by the evidence of a number of persons who had known him for a long time, including Stanislaw Poutoski, the other man in the photograph, with whom Kwiatanouski had lived for at least seven months prior to his departure from the city. This photograph was shown to the men who, we have said, worked with the man who was killed at the quarry on the day named, and each of them testified that the man to the left in the photograph, Joseph Kwiatanouski, was the man that was killed at the quarries on the 8th day of June, 1916, and that he was the only man killed on that day.

It was shown by the defendants at the hearing that the man killed at the quarry on the 8th of June, 1916, when first employed by the Keystone Lime and Stone Company, stated that his name was Frank Smith, which in the Polish language is spelled F-r-a-n-c-o-i-s S-m-a-j-d-a, and pronounced "Smyder" and this name was entered upon the books of the company; that after his injury he was immediately carried to the hospital in Havre de Grace, where he again gave his name as Frank Smith, and that name was written upon a card and placed upon his bed, and after his death a telegram was sent to the family of Frank Smith (Smajda) at his address, 604 Bond Street, in the City of Baltimore.

The family were not in the city at the time and, the house being closed, the telegram was delivered at Pensky's store, the place at which the family dealt on Bond Street. Pensky, knowing the whereabouts of Frank Smajda, Jr., son of the

said Frank Smajda, telephoned him to call at his store next day.   In obedience to this message, young Smith called at the store the next morning and was told by Pensky that some one had been there the day before with a telegram concerning his father who was at a hospital in Havre de Grace.   On the same day he took the train at noon for Havre de Grace and, upon arriving there, went at once to the hospital and was told that the remains of the party who had died there had been sent to the place of business of an undertaker in the same town.   From the hospital he then went to the undertaker's and saw the remains, which he said were those of his father.   He was then asked the name of his father and he replied Frank Smajda.

The young man returned to Baltimore, leaving the remains in Havre de Grace, and after talking to his mother as to the disposition of them, he wired the undertaker at Havre de Grace to send the body to Baltimore.   He, with four others, met the train and with a Baltimore undertaker took the body to the undertaker's establishment.   Upon reaching there, the lid was removed from the coffin showing the face and upper part of the body.   Michelina Smajda was there at the time and she, with her son and those who had accompanied the body from the station to the undertaker's, viewed the remains, and each and all of them positively stated they were the remains of Frank Smajda, the husband of Michelina Smajda, and father of Frank Smajda, Jr.

The body remained at the undertaker's for a day or more awaiting burial and, while there, was viewed by others who had known Frank Smajda, and they testified that the remains were those of Frank Smajda.

At the conclusion of the hearing the commission passed the following order:

"It is, therefore, this 5th day of May, 1921, by the State Industrial Accident Commission, ordered that the petition to reopen the above entitled case filed in these proceedings by the insurer be and the same is hereby denied, and it is further ordered that the claim

of Rosa Kabat, next friend of children of Joseph Kwiatanouski, filed in these proceedings for the death of said Joseph Kwiantanouski against the Keystone Lime and Cement Company, employer, and Travelers' Insurance Company, insurer, be and the same is hereby disallowed."

From this order an appeal was taken to the Baltimore City Court, by Rosa Kabat, next friend of Lillie and Leonard Kwiatanouski.

The evidence produced at the hearing before the commission was, with other cumulative evidence, submitted to a jury in the trial of the case on appeal.

"Three issues were submitted to the jury by the claimant, Rosa Kabat, as follows:

"(1) Did Joseph Kwiatanouski (sometimes called Joseph Bloom) meet his death June 8th, 1916, on account of injuries received by him on that date arising out of and in the course of his employment while employed by the Keystone Lime and Cement Company?

"(2) Was Lillian Kwiatanowski (sometimes called Lillian Bloom) dependent upon the said Joseph Kwiatanouski (or Bloom) at the time of his death?

"(3) Was Leonard Kwiatanowski (sometimes called Leonard Bloom) dependent upon the said Joseph Kwiatanowski (or Bloom) at the time of his death?

"And the defendants submitted the following issues:

"1.  Whether or not Frank Smajda was killed at the quarry of Keystone Lime and Stone Company on June 8th, 1916.

"2.  Whether there was more than one man killed on that day at the Keystone quarry."

The jury's answer to each of the issues of the claimant was "yes," and to the defendants' first issue they answered "no," and to their second issue they answered "only one man killed."

Upon the verdict the court entered a judgment reversing the finding of the commission, and from that judgment an appeal was taken to this court.

The first exception is to the ruling of the court in its refusal to grant a motion made by the appellees in that court to dismiss the claim of Rosa Kabat because, as claimed by them, it was barred by her failure to give the statutory notice of her claim to the employer within thirty days after the death of the employee.

The statute (section 38 of article 101 of the Code, volume 3) provides that:

> "Notice of an injury for which compensation is payable under this article shall be given to the employer within ten days after the accident, and also in case of the death of the employee resulting from such injury within thirty days after such death. * * * The failure to give such notice *unless excused by the commission either on the ground that notice for some sufficient reason could not have been given, or on the ground that the State Accident Fund, insurance company, or employer, as the case may be, has not been prejudiced thereby,* shall be a bar to any claim under this article."

In *Bloomfield* v. *November,* 219 N. Y. 375, where the claimant failed to give the statutory notice of her injury and the commission excused such failure and awarded her compensation, the court said: "The failure to give such written notice within 10 days after disability was a bar to this claim 'unless excused by the commission either on the ground that notice for some sufficient reason could not have been given, or on the ground that the state fund, insurance company, or employer, as the case may be, has not been prejudiced thereby.'

"Although the commission made findings, there was no finding of the existence of either of these reasons as an excuse for the failure to serve the specified notice. We simply

have certain 'conclusions of fact' pertaining to the occurrence
of the accident, disability, etc., a 'ruling of law' that the
claim came within the provisions of the Compensation Law,
and an award, and included in the statement of the latter is
the ruling that the 'claimant's failure to give the written
notice of injury to employer is hereby excused.'  We think
that this is insufficient and not a fair compliance with the
requirements of the statute or of good practice thereunder.

"* * * the Legislature has deemed it proper and essential,
under ordinary circumstances, that a written notice of dis-
ability and claim should be promptly served so as to give an
employer the opportunity to investigate the circumstances of
the claim. This requirement ought not to be treated as a mere
formality or be dispensed with as a matter of course when-
ever there has been a failure to serve such notice. The Leg-
islature has enumerated reasonable conditions under which
failure to serve the notice may be excused, and we think that
the attention of the commission should be fastened upon the
question whether upon the proofs in a given case the circum-
stances do exist which are sufficient to justify such failure,
and that if they do exist that fact should be properly stated
as one of the facts which constitute the basis of the award.
We do not think that it is good practice that the service of
such notice should be excused without any finding of the ex-
istence of conditions which justify such action on the part
of the commission or statement even of the theory on which
the excuse has been granted.

"* * * As I have indicated, I think that on the most fav-
orable version to claimant this was a question of fact, and
if the commission were influenced in excusing the failure to
serve a written notice on the ground that prompt and full
verbal notice had been given and, therefore, no harm had
been suffered, it ought to have passed fairly and explicitly on
this question of fact and have made apparent the ground upon
which it excused the failure to serve notice."

In determining whether the claimant shall be excused for
his failure to give such notice, the burden is upon him to

produce before the commission facts upon which the excuse may be granted on either of the grounds mentioned in the statute; and on appeal the record transmitted to the court should contain such facts. And it should appear, clearly and affirmatively, from the finding of the commission, that the claimant was or was not excused, and if excused, the ground therefor.

In this case, so far as the record discloses, the commission did not pass upon the claimant's failure to give the required notice to the employer, and consequently it did not excuse her on either of the grounds mentioned in the statute, and until excused, her claim was barred by the statute.

The motion should therefore have been granted, and as it was not granted, the judgment of the court below, reversing the finding of the commission, will be reversed and the case remanded in order that the appeal to the court below may be dismissed by that court.

> *Judgment reversed and the case remanded that the appeal may be dismissed, appellee to pay the costs.*