# VANG CONSTRUCTION COMPANY ET AL. *v.* GRAZIE MARCOCCIA.

[No. 84, October Term, 1927.]

*Decided February 8th, 1928.*

The cause was argued before BOND, C. J., PATTISON, URNER, ADKINS, OFFUTT, DIGGES, and PARKE, JJ.

*Clapham Murray, Jr.,* and *G. Randolph Aiken,* with whom were *Austin J. Lilly* and *F. Brooke Whiting* on the brief, for the appellants.

*Walter C. Capper,* with whom were *Paul L. Hitchins* and *Hugh A. McMullen, Jr.,* for the appellee.

PARKE, J., delivered the opinion of the Court.

Sante Marcoccia, an Italian bachelor and laborer, was employed by the Vang Construction Company, and on the 21st day of August, 1921, he received a fatal injury entitling his dependents to compensation under the Workmen's Compensation Act, Code, art. 101. Marcoccia was instantly killed, and three days later his employer filed with the State Industrial Accident Commission a report stating that the workman had been accidentally hurt, the time and place of the injury and death, the work upon which he was engaged at the time, how the accident occurred, the name of his employer, and his average weekly wage. On August 30th a report, dated August 25th, was likewise filed by Dr. H. V. Deming, a local physician, setting out the date of the accident, the nature of the work, and cause of death. There is no question that the claimant and appellee, Grazie Marcoccia, who has always resided in Italy, is the mother and sole partial dependent of the workman within the meaning of the

act. The employer had notice of the time, place, manner, and cause of the injury and death, and, under the circumstances, no further notice was required of the dependent.

The single question is, Has there been a compliance by the claimant with this second paragraph of section 39 of the act? "When death results from injury the parties entitled to compensation under this article, or some one in their behalf, shall make application for same to the commission within one year from the date of death, and which application must be accompanied with proof of death and proof of relationship under this article, certificate of attending physician, if attended by a physician, and such other proof as may be required by the rules of the commission."

Before considering the interpretation to be given this paragraph, it will be necessary to know the facts to which the statute is to be applied.

On October 4th, 1921, Hugh A. McMullen, Jr., Esq., addressed a letter to the State Industrial Accident Commission, informing that body (1) that he represented the claimants in interest of the dead workman; (2) that the workman was survived by his mother, who lived in Italy and was his only dependent; (3) that the writer had procured a certain Nick Scarpelli, of Cumberland, Maryland, where the man was living at the time of his death, to qualify as administrator; (4) that the writer would like to secure information from the commission as to the proper steps to be taken in making claim for compensation, and to know if the administrator could execute the various forms required by the commission. Mr. McMullen received a reply, dated October 5th, enclosing the necessary forms for dependents other than widow to present a claim for compensation with the commission, and advising him that non-resident alien dependents may be represented by the consular officers of the nation of which the dependents may be citizens or subjects, and in such cases the consular officers have the right to receive for distribution to such non-resident alien dependents all compensation awarded.

It is quite clear from this correspondence that neither the attorney intended his letter to be an application for compensation in behalf of the mother, nor did the commission accept or treat it as having been so made. Nor did the letter have a single requisite which would have characterized it, notwithstanding the object of the writer to the contrary, as being, in substance, an application. Even the name of the mother was not given, and there was no present demand for compensation in the name of any one, nor proof of death and relationship; and any possibility of considering the letter as a formal application is negatived by the writer's request for information as to what steps were necessary to be taken in making a claim for compensation.

Nothing more was done before the commission until a communication under date of January 6th, 1923, was addressed to one of its members by Mr. McMullen. In this letter, Mr. McMullen explained that he had originally been employed by some of the dead man's compatriots to seek compensation, and that he had investigated and found that the only dependent was the man's mother, who was a resident of Italy, and that he "did not file any report with the State Industrial Accident Commission, but the Vang Construction Company filed the necessary report of the death of this employee."

The attorney knew that the mother's application for compensation was not before the commission, since he concluded the letter with a request for a reply advising him what steps should be taken, and whether "any affidavits or petitions are necessary, because of the delay in not filing the claim at an earlier date." The commission's reply was dated January 9th, 1923, and informed its correspondent that the employer's and physician's reports were on file, "but that no claim had been filed by the dependents of the deceased." The letter then stated that the act required the application to be made within one year after the death, and that if the claim were now filed "it would be against the apparent intent of the act," but, as the law had never been construed by the commission, the application might be filed so as to pre-

sent the matter to the commission for a construction. Not only had the statutory requirements not been complied with within the year prescribed, but both the claimant, through her counsel, and the commission, accepted that as the actual situation.

On January 30th, 1923, the mother filed an informal claim for compensation, upon which the commission did not act, but on May 14th, 1923, a formal claim for compensation was filed and notice was then given of the claim to the Vang Construction Company, employer, and the Maryland Casualty Company, insurer, the appellants. A request was then made by the appellants for a hearing on two issues, (1) that the claim for compensation was not filed within one year of the date of death and (2) that the workman had left no dependents, within the act. Upon hearing, the commission determined the mother was partly a dependent, and that finding has ceased to be a matter of controversy. But the decision in favor of the claimant upon the first issue is now the subject of this appeal. The ruling was based on the commission's excusing the failure to file the claim in time upon the grounds that an investigation was being made by the insurer and the attorney for the claimant, and that the employer's right to raise this issue was waived by mutual consent. Pursuant to these findings, an award was made, and the appellants were ordered to pay the compensation to the mother. An appeal was then taken, and the questions were tried before the Circuit Court for Allegany County, sitting as a jury, and the decision and order of the commission was confirmed, whereupon the employer and the insurance carrier prayed this appeal.

The statement of the procedure in this cause makes it uncontrovertible that no application was filed within one year of the death of the employee, and this brings us to a consideration of the meaning and effect of the second paragraph of section 39 of article 101 of the Code. This paragraph in its original form, as enacted by chapter 800, section 38, of the Acts of 1914, permitted a claim for compensation for an injury resulting in death to be made at any subse-

quent time, and it was not until the act of 1920, ch. 456, sec. 39, that the change was made inserting the subsisting provision restricting the application to the period within one year from the date of death. The intention of the Legislature is obvious, and the language appropriate, to prescribe the time at the end of which no application for compensation can be maintained. Compare Code, art. 57, sec. 1, *et seq.*

While the Legislature has provided that the Workmen's Compensation Act shall be interpreted and construed so as to effectuate its general purpose, it is the duty of the court to enforce this enactment without regard to consequences where the legislative intention is so evident, the general object to provide a safeguard against fraud and oppression through stale damages is so salutary, and the evils it is designed to redress so patent as to make its enforcement a component part in the fulfillment of the general scheme of the Workmen's Compensation Act. Code, art. 101, sec. 63; *Holland Mfg. Co. v. Thomas,* 136 Md. 77; *Scott v. Independent Ice Co.,* 135 Md. 343, 350, 354. See *Green, Excr., v. Johnson,* 3 G. & J. 394.

The limitation being for the benefit, primarily, of the employer and, secondarily, of the insurance carrier, the commission has no authority to excuse a failure to make the application for compensation within the period of limitation, since no such power was conferred, as is the case in the event of an injury which does not result in death. *Keystone Lime Co. v. Kabat,* 142 Md. 562, 572; *Victory Sparkler Co. v. Francks,* 147 Md. 368, 383. Nor is notice of the accident equivalent to an application within the statute of a claim for compensation. The objects are not the same, one relates to an investigation of the injury and the other to the enforcement of the compensation, and the notice and application differ in their respective requirements and are found in separate sections of the statute. The provision that an application be made to the commission is mandatory, and, therefore, the fact that the employer, the insurance carrier, and the commission had knowledge of the injury will not

dispense with the necessity of the application for compensation being made. The actor in the matter of the application is the dependent, or, if disqualified through infancy or incapacity, some one in his behalf. Knowledge on the part of the employer and insurer of the injury, or of even the intention of the dependent to make the application, does not relieve the actor from proceeding within the time prescribed.

While our decisions do not supply a precedent exactly in point, *State v. Francis,* 151 Md. 147, 150; *Holland Mfg. Co. v. Thomas,* 136 Md. 77, 79; *Dickson Constr. Co. v. Beasley,* 146 Md. 568, 572; *Keystone Lime etc. Co. v. Kabat,* 142 Md. 562, 570, 572, support the conclusion reached, as does the weight of decisions in other jurisdictions, although their value in somewhat affected by the variation in the respective statutes. *Perry v. Clements* (1901), 17 Times Law Rep. 525; *Good v. Omaha,* 102 Neb. 654; *Cooke v. Holland Furnace Co.,* 200 Mich. 192; *Brown v. Weston-Mott Co.,* 202 Mich. 592; *Podkastelnea v. Mich. Cent. Ry.,* 198 Mich. 321; *Twonko v. Rome Brass etc. Co.,* 224 N. Y. 263; *Lemelin's Case,* 121 Me. 72; *Fidelity & Casualty Co. v. Indus. Accid. Commn.,* 177 Cal. 472; *Hunt v. Indus. Accid. Commn.,* 43 Cal. App. 215; *Bushnell v. Indus. Board,* 276 Ill. 262; *Central Locomotive & Car Works v. Indus. Commn.,* 290 Ill. 436; *Ohio Oil Co. v. Indus. Commn.,* 293 Ill. 461; *In re Hogan,* 75 Ind. App. 53; *Paolis v. Tower Hill, etc. Co.,* 265 Pa. 291; *Chase v. Emery Mfg. Co.,* 271 Pa. 265; *Petraska v. National Acme Co.,* 95 Vt. 76; *Levangie's Case,* 228 Mass. 213; *Cheesman v. Cheesman,* 236 N. Y. 47; *Gillo v. Sherman-Stalter Co.,* 195 App. Div. 362, 186 N. Y. Supp. 810 (affd. without opinion, 231 N. Y. 621); *Ashland Iron & Min. Co. v. Fowler,* 208 Ky. 422. But see *McLead v. South. Pac. Co.,* 64 Utah, 409; *Gailey v. Peet Bros. Mfg. Co.,* 98 Kan. 53; *Kottari v. Empire Iron Casualty Co.,* 217 Mich. 376.

It follows, as a consequence of what has been stated, that the claimant was barred by the statute of limitations when she made her application for compensation. For the statute to be effective it had to be pleaded, and this was done. *Dick-*

*son Constr. Co. v. Beasley,* 146 Md. 568, 572. There is nothing in the record to support a theory that the appellants had agreed to waive this defense or had elected not to make it. *Wood on Limitations* (4th Ed.), sec. 63-i. Although a number of courts of the highest authority have held that the particular statute of limitations in the compensation law of their respective jurisdictions cannot be set aside by agreement or by estoppel, *supra,* yet in *Dickson Constr. Co. v. Beasley, supra,* it was held, in reference to a claim for an injury not resulting in death, that the delay in filing that claim was a fact to be considered at the time of the allowance of the claim for that injury, and that the defense of undue delay was "relevant only to the controversy at that stage and should be litigated then, if at all." While the facts of this decision and the section construed are not like those at bar, yet the reasoning, when applied in the light of the statutory duty to give a liberal construction to the act, would indicate that, under appropriate circumstances, a party may be taken out of this statute of limitations by his acts, if they mount to an estoppel; and the appellee contends that the judgment can be supported on this ground.

The matters relied upon to establish the estoppel are found in the correspondence between McMullen and representatives of the Maryland Casualty Company; and in a letter from the insurance carrier to a third party, who had forwarded a letter from the dependent mother, dated November 8th, 1922, and in a second letter to a brother of the dead man.

1. The correspondence between McMullen and the assurer begins with one from McMullen to the claim adjuster under date of August 30th, 1921, giving information of the date of death of the workman, his employer, the place of the injury and its nature, and stating to the assurer's claim adjuster that the writer understood the adjuster had investigated the circumstances of the death, and that he would like to be advised of the then situation, and that the adjuster should take the matter up with the writer, if the assurer had any settlement or offer to make. In a letter of September 1st, the

claim manager, who wrote all the subsequent communications, promptly replied, advising McMullen that his letter had been referred to the writer for attention, that he had investigated and found the death to be one that came within the jurisdiction of the State Industrial Accident Commission, and that he had not completed his inquiry as to who the dependents were; that "this part of the case you will have to take up personally yourself," but that the writer would continue his investigation along the lines of dependency, and until this was complete he would be unable to make any suggestions in the case.

On September 6th, 1921, McMullen wrote in reply, for the manager's information, that the workman "is survived by a mother aged sixty-four years and all his brothers and sister are over twenty-one years of age." Neither the name of the mother nor any of her living children was given, so, on the 22nd of the same month, the manager wrote and asked if he would be furnished with her present residence, if she were in this country, and, if not, her exact foreign address. This letter was not answered, and the manager wrote no more letters to McMullen, but the latter wrote to the manager, under date of November 14th, 1921, stating he had failed to get a reply to his letter of September 6th, and asking to be advised of the status of the case; and again, under date of December 22nd, 1921, McMullen wrote inquiring if the manager had "received any word in the matter of the claim of Sante Marcoccia against the Maryland Casualty Company." After this McMullen wrote no more to the Maryland Casualty Company.

2. Apparently a brother, Gusieppe Marcoccia, wrote the assurer, because on November 4th, 1922, the manager acknowledged the receipt of a letter from him bearing date of October 21st, 1922, relative to his brother's case, and informed him that there was no settlement to be made, as there had been no dependency proven in the claim.

3. And likewise it appears that a John Yacovissi had received and delivered to the insurance carrier an applica-

tion from the mother in Italy, dated at Veroli, on November 8th, 1922, addressed "To the Gentlemen to whom it may concern," in which she stated her relationship and state of dependency upon him of herself and her two single daughters, applied for compensation in the name of the three, and asked that the party addressed use his good offices "with the insurance company concerned in this affair." Yacovissi lived in Baltimore and delivered this application to the assurer, which wrote him on December 8th, 1922, an acknowledgment of its receipt, stating: "In reply we would advise that she would be required to file a claim with the State Industrial Accident Commission, at Baltimore, Maryland."

Whether taken singly or collectively, these letters do not support an estoppel. The letters to the brother and to John Yacovissi were after the period of one year from the death of the employee. In the answer to the first letter the insurance carrier simply denied liability, and to the second the reply was the mother would have to enforce her claim through the accident commission. It did not advise her to do so, but informed her "she would be required to file a claim." In other words, compensation to her would be conditional upon her ability to show herself entitled to it under the law. There was nothing naturally calculated to induce in the claimant a belief that if she did proceed compensation would be paid. The assurer certainly did nothing in this connection prejudicially to change the position of the appellee, nor could an intention be inferred to relinquish any of its rights, when its reply to one correspondent was a denial of all obligation, and to the other was a notice that the claim would have to be enforced before a body having jurisdiction to determine the question of its liability. Nor do the facts that Yacovissi forwarded this reply of the insurance company to the dependent, who then went before a notary public at her home in Italy, and there made an affidavit on January 23rd, 1923, setting forth her relationship and dependency, with that of her two unmarried daughters, upon the son,

and that she had addressed and forwarded this affidavit and claim to the commission, which received and filed it on January 30th, 1923, change the situation. They simply show that the dependent, when informed, over one year after the death, that she would be required to proceed against the insurance carrier to collect compensation, did so proceed.

No act of the insurance carrier nor of the employer is shown to have delayed the application until the statute had attached, nor did the insurance carrier assure the dependent that, if she filed her application, it would not interpose the statutory limitation, with the intention that she would rely upon this assurance, and proceed with her application. The dependent and her legal advisers were as well aware of the defense of limitations as was the assurer, and it cannot be inferred that the dependent, to her loss, was misled into bringing the proceedings, when an inquiry of the employer or of his assurer would have disclosed whether or not the bar of the statute would be pleaded, and especially as it was necessary, even if the appellants had agreed not to plead limitations, for the appellee to have filed her application for compensation with the commission. *Supra;* and *Wood on Limitations* (4th Ed.), 53c. See *Stockett v. Sasscer,* 8 Md. 375, 379.

If we take the letters passing between McMullen and the insurance carrier, it will be found that the substance and effect of the insurance company's letters were that it had not completed its investigation to determine the existence and identity of total or part dependents, and until this was done the carrier would be unable to make any suggestion in the case. Only six letters passed in this correspondence, which began on August 30th, 1921, and ended on September 22nd, 1921, so far as the company was concerned, and was closed by McMullen writing two subsequent and unanswered letters on November 14th and December 22nd, 1921, making a general request for information with respect to the position of the assurer. The insurance carrier was under no obligation nor duty of contract or status to seek the dependents,

or to advise them when found. However, the assurer was not content with a policy of silence or inaction, but it put the attorney on notice of its investigation, and of its inability to act in any way until this case was completed, but without any promise then to state its decision; and plainly told him he must depend upon himself to protect his client's interests, when it wrote "of course, this part of the case you will have to take up personally yourself." The burden of affirmative action was not on the insurance carrier, nor then on the employer, who had before this correspondence duly reported the accident, but it did rest upon the dependent, compelling an initiative from her within the period of one year .from the death of the workman. The only inference which could be reasonably drawn from the silence of the company after September 22nd, 1921, was either that the investigation had not ended, or that the carrier had no intention of paying unless under the compulsion and as a result of proceedings instituted before the commission. *Georgia Casualty Co. v. Ward* (Tex. Civ. App.), 220 S. W. 380. The attorney, therefore, knew, certainly not later than the first of January, 1922, that the proper and necessary course for him to pursue, if he were then employed to represent the dependent, was to file her claim with the commission before the expiration of the year on August 20th, 1922.

The cases cited by the appellee have been examined, but they do not govern the facts on this record, when considered in connection with the Workmen's Compensation Act of this state. It clearly and necessarily follows that there was no change in the dependent's position, attributable to any breach of duty on the part of either the insurance carrier or the employer, and there is no estoppel.

Throughout the opinion the relation of the employer and the insurance carrier has been treated as that of co-principals, since no distinction was drawn in the argument of either side, and the legal questions involved were not embarrassed by that assumption. This fact is mentioned, as the general relation between them is that of principal and

surety, and it should be understood that nothing in this opinion is to be taken as deciding that the existence of this relation is of itself sufficient for the acts of the surety to be regarded as the acts of the principal, for the purposes of an estoppel of the principal. *Brenner v. Brenner,* 127 Md. 189, 194; *Bowers on Estoppel,* 152 *et seq.; Dailey v. Stoll,* 211 N. Y. 74; *Cheesman v. Cheesman,* 236 N. Y. 47.

Since the facts on this record have been ascertained by the parties and are undisputed, and the only controversy is whether these undisputed and largely documentary facts constitute in law an application for compensation within the meaning of the act or on the principle of estoppel, the case falls within the principle stated in *Harrison v. Central Constr. Co.,* 135 Md. 170, 180, and in *Todd v. Easton Furniture Co.,* 147 Md. 352, 359, although in the latter case the facts made the principle inapplicable, as, although undisputed, they were susceptible of two different inferences, the one taking the cause out of the act and the other leaving it within, so the issue was for the resolution of the jury. As the facts are undisputed and there is but one inference to be drawn from them, the trial court should have granted the first and third prayers, and passed an order reversing the award of the State Industrial Accident Commission of November 20th, 1925.

However much the effect of this decision may be regretted in the instant case, it is the solemn duty of the court to enforce a statute as enacted, and, if its operation is to be changed, the relief must come through legislation and not by way of judicial construction.

> *Judgment reversed with costs, and cause remanded, that an order may be passed by the trial court in conformity with this opinion.*

URNER, J., dissents.